**IT IS ORDERED as set forth below:**



**Date: March 31, 2026**

_____
*Susan D. Barrett*
United States Bankruptcy Judge
Southern District of Georgia

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| | ) | Number 24-10908 |
| MALIAH ISIS BUSH, | ) | |
|     Debtor. | ) | |
| _____ | ) | |
| | ) | |
| CHARLES W. WILLS, CHAPTER 7 | ) | |
| TRUSTEE, | ) | |
|     Plaintiff. | ) | |
| | ) | Adversary Proceeding |
|     v. | ) | Number 25-01016 |
| | ) | |
| TURNBULL LAW GROUP, LLC, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

Before the Court is a Motion to Dismiss ("Motion") filed by Defendant Turnbull Law Group,

LLC ("Defendant").  Dckt. No. 14.  Plaintiff Charles W. Wills, as Chapter 7 Trustee ("Plaintiff"), filed

1

a Response and Defendant subsequently filed its Reply in support of the Motion.  Dckt. Nos. 21, 22.

Having been considered and heard, and for the reasons stated below, the Motion is DENIED.

## BACKGROUND

### A. The Complaint

Debtor Maliah Isis Bush ("Debtor") filed her chapter 7 petition on December 26, 2024.

Case No. 24-10908, Dckt. No. 1.  Plaintiff initiated this adversary proceeding on October 7, 2025.

Dckt. No. 1.  Plaintiff pleaded the following facts in his Complaint:

On or about January 12, 2023, Debtor entered a "Client Engagement Agreement" (the

"Agreement") with Defendant for a "Debt Resolution Program" where Defendant would receive funds

from Debtor and disburse the funds, minus fees, to Debtor's creditors "on an adjusted, reduced, and/or

compromised basis."  Dckt. No. 1 ¶ 10.  Under the Agreement, Defendant's fees would amount to

6.5% of the total debts included in the Agreement as a "retainer fee" and 20.5% of the total debts

included in the Agreement as a "service cost" for the "management of Debtor's 'debt negotiation

plan.'"  Id. ¶ 11.

Debtor listed 6 creditors with claims totaling $37,247.00 to be included in the Agreement.  Id.

¶12.  From January 19, 2023 to June 7, 2025, Debtor paid Defendant a total of $18,071.77.  Id. ¶ 13.

Between April 26, 2023 and December 26, 2024, Defendant paid $8,900.02 to Debtor's creditors.  Id.

¶ 14.  Meanwhile, between May 1, 2023 and May 29, 2024, Defendant paid itself $8,289.54 in fees,

amounting to 46% of the total amount Debtor paid.  Id. ¶ 15.

Plaintiff has asserted several causes of action arising from this course of dealing.  In Count One,

Plaintiff asserts he is entitled to avoid the payments to Defendant as fraudulent transfers under

11 U.S.C. §548(a)(1)(B).[1]  Dckt. No. 1 ¶¶ 16–22.  Plaintiff alleges the payments (i) constituted a

---

[1]   Unless otherwise stated, all references are to Title 11 of the United States Code.

transfer of Debtor's interest in property, (ii) the payments were made within two years of the petition date, (iii) Debtor received less than reasonably equivalent value in exchange, (iv) there was no reasonable likelihood Defendant's services would benefit Debtor and the Agreement left Debtor in a worse financial position, and (v) Debtor was insolvent at the time of the payments or became insolvent as a result. Id. ¶¶ 17–21. In Count Two, Plaintiff asserts he is entitled to avoid the payments to Defendant pursuant to O.C.G.A. §18-2-75(a), made applicable by §544(b)(1), for the reasons set forth in Count One. Id. ¶¶ 23–29. In Count Three, Plaintiff asserts pursuant to §550(a) that he is entitled to recover from Defendant the value of Debtor's payments because Defendant was the initial transferee of the payments and/or the person for whose benefit the Payments were made. Id. ¶¶ 30–32.

Counts Four and Five pertain to Georgia state law. In Count Four, Plaintiff asserts Defendant violated §18-5-2 and §18-5-3.2 of the Georgia Debt Adjustment Act ("GDAA") by charging fees for its debt adjustment services in excess of the 7.5% allowed by O.C.G.A §18-5-2 and by failing to disburse all funds to Debtor's creditors within thirty (30) days of receipt as required by O.C.G.A. §18-5-3.2 and therefore Defendant is liable for a civil fine of $50,000.00 and $23,071.77 in damages pursuant to O.C.G.A. §18-5-4(b)(1)-(2). Id. ¶¶ 33–44. Count Five relies on Count Four, asserting Defendant's violations of the GDAA also are violations of the Georgia Fair Business Practices Act ("GFPBA").[2] Id. ¶¶ 45–47. Plaintiff states he notified Defendant of its violation by letter and asserts Defendant is liable for damages including actual damages, treble damages, and attorney's fees and expenses pursuant to O.C.G.A. §§ 10-1-399(a) and (c)–(d). Id. ¶¶ 48–51.

### B. The Motion to Dismiss

Defendant argues Counts One and Two should be dismissed for failure to state a claim, asserting the Complaint is conclusory as to Debtor's receipt of less than reasonably equivalent value and

---

[2]   O.C.G.A. §10-1-391.

"[Plaintiff] does not offer any factual allegations about the extent of the services that [Defendant] provided, why such services were worth less than what Debtor paid for, or whether any debts of Debtor were negotiated or settled." Dckt. No. 14, at 6–7. Defendant argues because Counts One and Two fail, so must Plaintiff's claim for transfer avoidance in Count Three. See id. at 9. Defendant also argues the Court should dismiss Count Four because the GDAA does not apply to Defendant "as [it is] a law firm that provided legal services to Debtor" which is expressly exempted from GDAA and "any claim is barred by the exemption set forth in O.C.G.A. §18-5-3, as well as the separation of powers doctrine under the Georgia Constitution." Id. at 9. Furthermore, Defendant argues Count Five should be dismissed for the same reasons because Plaintiff's "sole allegation" for liability under the Georgia Fair Business Practices Act ("GFBPA") is dependent on liability under the GDAA. Id. at 17.

Defendant acknowledges the recent decision in Schofield v. The Brian A. Moore Law Firm, LLC (In re Mai), Adversary Proceeding No. 24-02004, 2025 WL 2803789 (Bankr. S.D. Ga. Sept. 30, 2025), wherein another bankruptcy court in this district denied a motion to dismiss in a case with nearly identical facts and arguments. Dckt. No. 14, at 13. Defendant argues this Court should not follow the reasoning of that decision because: (1) that defendant in Mai is currently seeking leave to appeal the order to the district court[3] and the bankruptcy court's conclusions have not been reviewed and ruled upon by the district court, the Eleventh Circuit, or considered by any Georgia state court; and (2) the decision is incorrect on its merits. Id. at 13–17.

In support of its Motion, Defendant attached a declaration ("Declaration") by Christopher Turnbull, the member-manager of Defendant. Dckt. No. 14-1. Attached to the Declaration is a copy

---

[3] The law firm in In re Mai has requested leave to appeal the bankruptcy court's interlocutory order denying its motion to dismiss. The Brian A. Moore Law Firm LLC v. Schofield, Case No. 2:25-cv-00127 (S.D. Ga. Oct. 15, 2025), Dckt. No. 2. As of the date of this Order, there has been no ruling on the law firm's request to appeal.

of the Agreement signed by Debtor and Jordon Solomon, who is identified as one of Defendant's attorneys, and a document displaying Ms. Solomon's membership with the State Bar of Georgia. Dckt. Nos. 14-2, 14-3; see also Dckt. No. 14, at 4.  Defendant also attached a copy of the Brian A. Moore Law Firm's motion for leave to appeal the Mai order.  Dckt. No. 14-4; see infra note 3.

Plaintiff responds he has adequately pleaded all five counts in the Complaint, and therefore Defendant's Motion should be denied.  Dckt. No. 21.  He states the Complaint "contains specific factual allegations regarding the disproportionate fee structure . . . . [which] when taken as true as required at the motion to dismiss stage, plausibly establish that the Debtor did not receive reasonably equivalent value."  Id., at 3.  Plaintiff also argues the "practice of law" exemption in the GDAA is an affirmative defense which cannot be resolved at the motion to dismiss stage.  Id.  Similarly, Plaintiff asserts the GFBPA claim cannot be resolved at this stage due to factual issues of whether such services were provided in the practice of law.  Id. at 3–4.  In its Reply, Defendant largely repeats the arguments made in the Motion.  Dckt. No. 22.  Defendant also attached to its Reply a Westlaw printout of the 2003 Georgia Laws Act 103 regarding the GDAA (H.B. 385).  Dckt. No. 22-1.

## CONCLUSIONS OF LAW

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).[4]  A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)[5] where it appears the alleged facts fail to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "In ruling on a 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."  Speaker v. U.S. Dept. of Health and Human Servs. Ctrs. for Disease Control and Prevention,

---

[4]   Made applicable by Fed. R. Bankr. P. 7008.

[5]   Made applicable by Fed. R. Bankr. P. 7012.

623 F.3d 1371, 1379 (11th Cir. 2010).  To survive a motion to dismiss for failure to state a claim, heightened fact pleading of specifics is not required; instead, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Id. at 1379–80 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

As a general rule, matters outside the pleadings may not be considered in ruling on a Rule 12(b)(6) motion to dismiss unless it is converted to one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).

> Typically, a motion to dismiss must be converted into a motion for summary judgment when a [] court considers matters outside the pleadings.  Fed. R. Civ. P. 12(d); Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005).  However, the [] court may always consider exhibits attached to the complaint on a 12(b)(6) motion, because exhibits are part of the pleadings.  Fed. R. Civ. P. 10(c); Thaeter v. Palm Beach Cty. Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006).
>
> The [] court may also consider documents referenced in the complaint, even if they are not physically attached, if the documents are (1) central to the complaint and (2) no party questions their authenticity.  Day, 400 F.3d at 1276.  We have held that a document is central to a complaint when it is a "necessary part of [the plaintiff's] effort to make out a claim."  Id.  When a defendant attaches documents that meet this standard to a motion to dismiss, the court may consider the documents without converting the motion to dismiss into a motion for summary judgment. See id. at 1275–76.

Basson v. Mortg. Elec. Registration Sys., Inc., 741 F. App'x 770, 770–71 (11th Cir. 2018); see also Johnson v. City of Atlanta, 107 F.4th 1292, 1299–1300 (11th Cir. 2024).  Additionally, "[a] district court may take judicial notice of public records, such as pleadings filed in another case, without converting a motion to dismiss into a motion for summary judgment."  Lawson v. Visionworks of Am., Inc., 741 F. Supp. 3d 1251, 1255 n.2 (M.D. Fla. 2024) (citing Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n, 177 F. App'x 52, 53 (11th Cir. 2006)).

6

At this time, the Court declines to convert the Motion into a motion for summary judgment and will consider the Complaint and the Agreement attached to the Motion.  See Basson, 741 F. App'x at 771.  The Agreement contains information underlying Plaintiff's claims and is therefore central to the Complaint.  Additionally, neither party has not challenged the authenticity of the Agreement.  On the other hand, at this stage in the proceedings, Ms. Solomon's bar membership status is not central to Plaintiff's claims or this Motion and thus will not be considered.  Finally, the Court takes judicial notice of the Brian A. Moore Law Firm's motion for leave to appeal the Mai order attached to the Motion and the 2003 Georgia Laws Act attached to the Reply.  See Lawson, 741 F. Supp. 3d at 1255 n.2.

Defendant argues the Court should not consider the Mai order because the decision is on appeal and has not been reviewed, and is incorrect on its merits.  Dckt. No. 14, at 13–17.  However, the legal analysis in the Mai order and the status of the appeal are relevant to the issues under consideration in this Opinion and Order.  First, In re Mai involves almost identical facts, and the Mai court's analysis of these issues is relevant for consideration of the matter current before the Court.  Furthermore, the status and ultimate outcome of the appeal is relevant to these matters.  After consideration of the record and various arguments, the Court finds In re Mai to be persuasive and adopts the reasoning set forth in the bankruptcy court's September 30, 2025 order.  See In re Mai, 2025 WL 2803789, at *5–14.

As to Count One, the elements of a fraudulent transfer claim under § 548(a)(1)(B) are that: "(1) the debtor had an interest in property; (2) the transfer of that interest occurred within [two] year[s] of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the debtor received less than reasonably equivalent value in exchange for such transfer."  (Dionne v. Keating (In re XYZ Options, Inc.), 154 F.3d 1262, 1275 (11th Cir. 1998).  Defendant argues Plaintiff has not sufficiently pleaded facts showing Debtor did not receive reasonably

7

equivalent value for her payments to Defendant.  Dckt. No. 14, at 8–9.  Defendant makes no arguments or assertions as to the other elements included in §548(a)(1)(B).

With respect to Defendant's assertions regarding reasonably equivalent value, the Court finds Section II of the In re Mai decision persuasive and adopts the reasoning of that section herein.  See In re Mai, 2025 WL 2803789, at *5.  "[W]hether a transfer was made for reasonably equivalent value is a question of fact which courts generally will not determine on a motion to dismiss."  Mukamal v. Cosmos, Inc. (In re Palm Beach Fin. Partners, L.P.), No. 09-36379, Adv. No. 11-02970, 2013 WL 12478838, at *17 (Bankr. S.D. Fla. July 30, 2013) (citing Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA, Inc.), 680 F.3d 1298, 1311 (11th Cir. 2012)).  Courts do not look for "dollar-for-dollar equivalence" but rather "make informed judgments as to asset valuation in light of the totality of the circumstances."  In re Fundamental Long Term Care, Inc., 873 F.3d 1325, 1344 (11th Cir. 2017).  In order to be plausible, the complaint must offer "more than a bald assertion" that the services received by Debtor exceeded the value received by Defendant.  Id.

Here, Plaintiff has alleged Debtor transferred $18,071.77 to Defendant within two years of filing the petition between January 19, 2023 and June 7, 2025.  Dckt. No. 1 ¶ 13.  Plaintiff further alleges Defendant paid $8,900.02 to Debtor's creditors from April 26, 2023 until December 26, 2024, while paying itself $8,289.54 in fees from May 1, 2023 until May 29, 2024, representing 46% of the total amount paid by Debtor.  Id. ¶¶ 14–15.   Citing these numbers, Plaintiff alleges Debtor did not receive reasonably equivalent value for her payments to Defendant.  Id. ¶ 19.  Plaintiff has sufficiently pleaded facts to survive Defendant's Motion as to Count One.

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the Plaintiff.  Speaker, 623 F.3d at 1379.  Plaintiff's complaint includes specific numbers to support his claim that Debtor did not

8

receive reasonably equivalent value.  Accepting Plaintiff's well-pleaded allegations as true and making all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff has pleaded sufficient facts to state a claim for fraudulent transfer under §548(a)(1)(B) as to Count One.  See In re Mai, 2025 WL 2803789, at *5.

As to Count Two, the Court finds Section III of the Mai decision persuasive and adopts the reasoning of that section herein.  See id. at *6.  Under §544(b)(1), "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." §544(b)(1).  "Thus, in order to maintain an avoidance action under §544(b), a trustee must demonstrate the existence of a so-called 'golden' or 'triggering' creditor: (1) an unsecured creditor, (2) who holds an allowable unsecured claim under section 502, and (3) who could avoid the transfers at issue under applicable (i.e., state) law."  MC Asset Recovery, LLC v. Southern Co., No. 1:06-CV-0417, 2006 WL 5112612, at *3 (N.D. Ga. Dec. 11, 2006) (citations omitted).  The applicable state law here is O.C.G.A. §18-2-75(a):

> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

O.C.G.A. §18-2-75(a).

As in Count One, Defendant claims Plaintiff has not pleaded sufficient facts to show Debtor has not received reasonably equivalent value for the payments.  See Dckt. No. 14, at 6–9.  Defendant makes no arguments or assertions as to the other elements of this Count.  As with the §548(a)(1)(B) claim, the Complaint pleads Debtor paid Defendant more than $18,000.00 with Defendant only about $8,900.00 to Debtor's creditors.  For the same reasons discussed above as to Count One, the Court

finds Plaintiff has pleaded sufficient facts to state a claim for transfer avoidance under §544(b)(1) and O.C.G.A. §18-2-75(a).

Next, Defendant argues because Counts One and Two fail, so must Plaintiff's claim for transfer avoidance in Count Three.  See id. at 9.  The Court finds Section IV of the Mai decision persuasive and adopts the reasoning of that section herein.  In re Mai, 2025 WL 2803789,  at *6–7.  Section 550(a)(1) provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]

§550(a)(1).

To have a claim under §550(a), the Plaintiff must state a claim for relief under §544 or §548. See In re Mai, 2025 WL 2803789 at *6 (quoting Andrews v. Graham Golding Co., Inc. (In re Graham Gulf, Inc.), Case No. 15-3065, Adv. No. 17-00082, 2018 WL 10345330, at *2 (Bankr. S.D. Ala. Feb. 14, 2018)).  Defendant asserts "[s]ection 550(a) is a secondary cause of action after a trustee has prevailed under the avoidance actions of the Bankruptcy Code." Dckt. No. 14, at 9.  However, as stated above, the Court finds Plaintiff has sufficiently pleaded facts to state a claim under §544 and §548, therefore, the Court finds Plaintiff's claim under §550 should not be dismissed.

As to Count Four, the GDAA provides:

> In the course of engaging in debt adjusting, it shall be unlawful for any person to accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor; provided, however, no provision of this chapter shall prohibit any person, in the course of engaging in debt adjusting, from imposing upon a debtor who resides in this state a reasonable and separate charge or fee for insufficient funds transactions.

O.C.G.A. §18-5-2.  The GDAA also provides "[a]ny person engaged in debt adjusting shall disburse to the appropriate creditors all funds received from a debtor, less any fees authorized by this chapter, within 30 days of receipt of such funds."  Id. §18-5-3.2(a).  The GDAA exempts "those situations involving debt adjusting incurred in the practice of law in this state" from its application.  Id. §18-5-3.  "Debt adjusting" is defined under the GDAA as follows:

> (1) "Debt adjusting" means doing business in debt adjustments, budget counseling, debt management, or debt pooling service or holding oneself out, by words of similar import, as providing services to debtors in the management of their debts and contracting with a debtor for a fee to:
>
>> (A) Effect the adjustment, compromise, or discharge of any account, note, or other indebtedness of the debtor; or
>>
>> (B) Receive from the debtor and disburse to his or her creditors any money or other thing of value.

Id. §18-5-1(1).

Count Four alleges Defendant violated the GDAA by charging Debtor a fee well in excess of the 7.5% allowed under the GDAA.  Dckt. No. 1 ¶ 36.  According to the Complaint, Defendant charged Debtor fees in excess of 40% of the payments Debtor made to Defendant, and none of these fees were collected for insufficient funds transactions.  Id. ¶¶ 37–38.  Plaintiff also alleges Defendant violated O.C.G.A. §18-5-3.2 by collecting $2,620.00 from Debtor prior to disbursing any funds to Debtor's creditors and by routinely failing to make disbursements to Debtor's creditors within 30 days of receiving funds from Debtor.  Id. ¶ 41–42.  Defendant argues it is exempt from the GDAA "as a law firm that provided legal services to Debtor," and "[t]he GDAA necessarily excludes from its purview law firms and attorneys, such as [Defendant]."  Dckt. No. 14, at 9–10.  In support of this, Defendant asserts the "Agreement was reviewed and signed by Georgia attorney Jordan Solomon . . . and states that [Defendant] and Debtor would form an attorney/client relationship," and its "legal representation included attorneys reviewing their file, analyzing legal strategy, handling any litigation, reviewing

11

settlements, and supervising [Defendant]'s non-attorney staff." Id. at 10.  Defendant asserts section 1 of the Agreement details the legal services provided to the Debtor, which include "litigation defense, negotiating and resolving debt, and analyzing debt" and "which are excluded from the purview of the GDAA." Id. at 11.  In the alternative, Defendant argues application of the GDAA to it would violate the Georgia Constitution's separation of powers by regulating the practice of law.  Id. at 12–17.

For the reasons previously herein, the Court finds Section V of the Mai decision persuasive and adopts the reasoning of that section herein.  See In re Mai, 2025 WL 2803789, at *7-12.   First, Mai found the "[d]efendant's assertion that it is exempt from the GDAA pursuant to O.C.G.A. §18-5-3 is an affirmative defense." Id. at *8.

> "A plaintiff is not required to negate an affirmative defense in its complaint.  Thus, generally, the existence of an affirmative defense will not support a motion to dismiss." Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP, 609 F. App'x 972, 976 (11th Cir. 2015) (citations and quotations omitted). "A complaint may be dismissed, however, when the existence of an affirmative defense clearly appears on the face of the complaint." Id. (quotations omitted); see also Major League Baseball v. Crist, 331 F.3d 1177, 1183 (11th Cir. 2003) (in federal antitrust case against MLB, stating "[w]hen the applicability of baseball's exemption is so apparent, no factual development is necessary").

Id.  Next, Mai found the applicability and scope of the GDAA exemption as to the Mai defendant survived the motion to dismiss because the applicability of the GDAA to the facts was unclear and presented questions of fact which could not be determined from the record before the court.  Id. at *10. Further, Mai found that the GDAA exemption does not create a blanket exemption for law firms and debt adjustment conduct.  Id.  Finally, Judge Kim in In re Mai found applying GDAA to a law firm did not impermissibly regulate the practice of law and run afoul of the separation of powers principles in the Georgia constitution.  Id. at 11-12.  After consideration, the Court agrees with Judge Kim's analysis and conclusions on these matters and adopts them in this case.    For these reasons, the Court finds Count Four survives dismissal.

In Count Five, Plaintiff alleges Defendant violated the GFBPA because violations of the GDAA are also violations of the GFBPA. Dckt. No. 1 ¶ 46. Defendant argues Count Five should be dismissed because "the purported [GFBPA] violations in Count [Five] are entirely dependent on (or derivative of) a violation under the GDAA" and Defendant is exempt from the GDAA because it "provided legal representation to Debtor" and "the GFBPA does not apply to the practice of law at all." Dckt. No. 14, at 17. The Court again finds the reasoning in Section VI of In re Mai persuasive and adopts it as its own in relevant part.[6] See In re Mai, 2025 WL 2803789, at *12–14. For the reasons discussed above, the Court found Count Four survives dismissal and therefore, the Court finds Count Five survives dismissal.

For these reasons, the Court finds Plaintiff has sufficiently pleaded facts to sustain each Count of the Complaint and overcome Defendant's Motion. Specifically, as to Counts One, Two, and Three Plaintiff has sufficiently pleaded that Debtor did not receive reasonably equivalent value in exchange for the payments she made to Defendant and therefore Court denies the Motion. Furthermore, Defendant's grounds for dismissal of Counts Four and Five involve the nature of the actual services Defendant provided to Debtor. Because these involve facts not yet in the record, the Motion is denied as to those Counts. Therefore, the Motion is ORDERED DENIED.

**[END OF DOCUMENT]**

---

[6]  The portion of In re Mai addressing merits of the plaintiff's claims for a violation of the Georgia Unfair and Deceptive Practices Toward the Elderly Act is inapplicable in the present case, and thus, the reasoning and conclusions concerning such claim are not adopted here.

13